## POOL SHIPPING CO., Limited, v. SAMUEL.

(District Court, E. D. Pennsylvania. November 10, 1911.)

### No. 54.

1. SHIPPING (§ 177*)—TIME FOR DISCHARGING—CONSTRUCTION OF CHARTER.

A delay of six days before commencing to discharge a cargo of iron ore, consigned to the charterer and which he had sold to a manufacturer, caused by the refusal of a railroad company because of a dispute with the manufacturer to furnish cars in which to unload the ore, was not chargeable to the charterer on the lay days, under a provision of the charter party excepting "all causes beyond the control of the shipper, the consignee or the charterer which may prevent or delay the loading or discharging."

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 177.*]

2. SHIPPING (§ 50*)—CHARTER—COST OF MOVING VESSEL.

A charterer is not liable for the cost of moving a vessel from one pier to another for discharging, where the change was made by order of the commissioners of navigation, and not at the charterer's instance or request.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 50.*]

In Admiralty. Suit for charter hire by the Pool Shipping Company, Limited, owner of the steamship Teespool, against Frank Samuel. Decree for respondent.

Edward F. Pugh and Converse & Kirlin, for libelant.
Lewis L. Smith, for respondent.

J. B. McPHERSON, District Judge. [1] The respondent chartered the British steamship Teespool to carry a cargo of iron ore to Philadelphia consigned to himself, and by unloading the cargo speedily he earned dispatch money in some amount, the principal controversy being over the number of days for which allowance should be made. The cargo was 6,550 tons, and, as the charter party provided, "The cargo to be loaded at the rate of 250 tons, and discharged at the rate of 250 tons, per weather working day of 24 consecutive hours (Sundays and holidays excepted)," it appears that the lay days were 26 days and 5 hours. The discharge was accomplished in about

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3 days, however, and the apparent time to be allowed is therefore about 23½ days. The dispute grows out of the fact that, although the lay days began on January 12, work did not begin until January 19. The libelant contends that these seven days (or rather 6 days, since one Sunday is to be deducted) should be added to the three days of work; while the respondent's position is that they should not be so added, because the delay was beyond his control. The charter party provides that:

"The act of God, * * * unavoidable accidents, and all causes beyond the control of the shipper, the consignee, or the charterer, which may prevent or delay the loading or discharging during the said voyage, always mutually excepted."

This hearing is on libel and answer, and the answer must be accepted as true. It therefore appears that the delay in discharging was caused solely by the refusal of the Reading Railroad Company (at whose pier the vessel was lying) to furnish the necessary cars. The cargo had been bought by a manufacturer whose plant is about 35 miles distant from Philadelphia, and could not be carried directly to him except over the Reading's road. The company, however, had quarreled with the manufacturer, and refused to accept the cargo until the quarrel should be settled. There was no other reason for refusing the cars. The respondent made every effort to induce the railroad company to recede from its position, even applying, but without success, to a court of Philadelphia county for equitable relief, but it was January 19 before the company changed its mind.

Was this a cause of delay beyond the respondent's control? The answer, I think, should be in the affirmative. He had nothing to do with the quarrel, either as a party or as a person directly interested, and could not compel the company to furnish the cars. He could only do what he did—ask the courts for relief, and try the arts of persuasion, and in my opinion he is protected by the clause last quoted.

I agree that the ship could not be detained indefinitely, but a problem so unusual may be left for solution until the occasion shall arise. I am dealing now with a different situation, namely, where only a brief and reasonable delay is involved—a period well within the lay days which the ship expressly agreed to allow—and with reference to such a delay I think the conclusion just announced is correct. The decision depends on the proper application of the clause in question, and is not decisively ruled by any case that has been cited. The parties expressly agreed that some delays were to be excused, and the question simply is whether this particular delay was beyond the respondent's control.

[2] The libelant seeks to recover also the cost of moving the steamship from one pier to another; but, as this change was made by order of the commissioners of navigation, and not at the request or instance of the respondent, I do not see on what ground this item of charge can be allowed.

A decree may be entered dismissing the libel, with costs.